**BELL et ux. v. PARSONS et al.**

**No. 774.**

Court of Civil Appeals of Texas, Eastland.

Dec. 12, 1930.

Rehearing Denied Jan. 16, 1931.

Frank S. Roberts and C. J. O'Connor, both of Breckenridge, for appellants.

Kay & Akin and B. Y. Cummings, all of Wichita Falls, for appellees.

FUNDERBURK, J.

This suit was brought by Mrs. Hannah Parsons, joined by her husband, George Parsons, against S. L. Bell and wife, Jo Ella Bell, to cancel a deed dated July 12, 1928, whereby, for a recited consideration of $10, and, "in further consideration of the love and affection which I have and which my deceased husband had for our niece, Jo Ella Bell and her husband, S. L. Bell," the said plaintiff, while a widow, conveyed to the defendants a certain tract of land in Stephens county of about 240 acres. Plaintiffs' petition alleged: "That they, (that is, S. L. Bell and Jo Ella Bell) procured her to go and carried her to the office of an attorney, to-wit: C. J. O'Connor, who was also a notary public, and there told her, as they had often told her before, that the instrument she was executing and which they sought to have her execute, was a will and would have no effect until after her death, at which time the property would be divided among all of the heirs, according to law. * * * That the said plaintiff, Hannah Parsons, not suspicioning that any wrong would be committed, either in the procurement or the form of such instrument, fully relied upon the defendants and their representations made by themselves and their attorney, and trusted implicitly in them, and was thus fraudulently cheated out of her said land, and deprived of the legal title to the same." Other allegations of the pleading, taken in connection with the portion above quoted, are believed to be sufficient to state a cause of action for the cancellation of the deed. Of defendants' pleadings it is important only to notice that there was a general demurrer and a general denial. Upon the trial the court, after overruling a motion by defendants for an instructed verdict in their favor, submitted the case to a jury upon special issue No. 1, and certain other special issues, with the instruction that, if the jury answered issue No. 1 "Yes," they need not answer the other special issues. The jury answered special issue No. 1 in the affirmative; the said issue and the jury's answer being as follows: "Do you find from a

preponderance of the evidence that the plaintiff Mrs. Hannah Parsons was induced to execute the deed in question by the representations on the part of the defendants, or either of them, that the same was a will? * * *. Answer 'Yes.'" Upon this verdict the court gave judgment for plaintiffs, decreeing cancellation of the deed. From that judgment the defendants have duly prosecuted this appeal.

Appellants by twenty-eight different propositions contend that the judgment of the trial court was erroneous and should be reversed. It will serve no useful purpose for us to undertake to discuss the different propositions. We are of opinion that all of them, except the two or three hereinafter mentioned, are without merit and do not raise questions of sufficient importance to justify further discussion.

■ The first proposition presents the contention that plaintiffs' pleading was subject to general demurrer because of the absence of any allegation therein that plaintiff believed the alleged misrepresentations. The petition alleged that "plaintiff was ignorant of the law, and especially ignorant of legal instruments and documents, and that she was illiterate and unable to write, and that she was unable to understand or appreciate the effect of any legal instrument when read to her or when explained to her, and that defendants, well knowing these facts, procured her to execute the deed," etc. And, further, that she "fully relied upon the defendants and their representations * * * and trusted implicitly to them and was thus fraudulently cheated," etc. It is not necessary to the statement of a cause of action for fraudulent representations that it be alleged that they were believed, provided facts are alleged from which the fact of such belief is necessarily implied. We are of opinion that the allegations above quoted necessarily imply such belief.

■ Appellants present the question of the sufficiency of the evidence to support the judgment of the trial court. It is insisted that the verdict of the jury was without sufficient evidence to support it. In the foregoing quotation from plaintiffs' petition are allegations that defendants told Mrs. Parsons that she "was executing * * * a will," and that it "would have no effect until after her death," and that then "the property would be divided among all of the heirs, according to law." These representations were alleged to be false, in that, instead of a will, the instrument was a deed. Those things, it was alleged, were told her in the office of the attorney, C. J. O'Connor, "as they had often told her before." What the defendants had told her before the time she executed the deed in O'Connor's office was or was not material, depending upon what information to the contrary, if any, she had, before she executed the deed. Even if the defendants made exactly the representations which the plaintiffs alleged, prior to going to the lawyer's, but in the lawyer's office and before she signed the deed the facts were fully explained to her, showing that she was signing a deed, and under circumstances such as she must have understood what she was doing, then, in that case, such prior representations would be rendered immaterial. She could no longer contend that she had relied upon same, because she would have no right to do so in the face of what the lawyer told her there in the presence of Bell and disinterested witnesses. It may be conceded that the testimony presented a conflict in the evidence, as to whether, prior to what happened in O'Connor's office, the defendants had urged Mrs. Parsons to make a will in their favor, and that was the purpose of her being present in O'Connor's office. It is undisputed that, while in the office, Mrs. Parsons executed both a deed and a will. As a witness she both affirmed and denied that she went to the lawyer's office for the purpose of making a will, leaving her property to the defendants. It was necessary to prove her purpose to make a will, as otherwise she could not show that she was induced to sign the deed under representations that it was a will. The fact that she did do just what she intended to do, with reference to making a will, renders it the more difficult to appraise the testimony, if any, tending to show that she signed the deed under the belief that it was a will. There was clearly no evidence whatever that either of the defendants or O'Connor, whomever the latter may have represented as attorney, made any representations in the office that the deed was a will. The testimony of O'Connor was undisputed that, after Mrs. Parsons was informed that the deed previously prepared was ready to be executed, she requested him to write the will bequeathing other property than that described in the deed. That he then and there wrote the will at her direction. That Mr. Castleman, justice of the peace, and Mr. Sears, tax assessor, came in as witnesses, and both the deed and will were read over, paragraph by paragraph, and explained to her before she signed and acknowledged same. This testimony is fully supported by the disinterested witnesses, Castleman and Sears, and by S. L. Bell.

Mrs. Parsons' testimony, we think, cannot reasonably be regarded as disputing these facts. For example, she testified as to what happened in Mr. O'Connor's office:

"I don't just hardly know—I was just so grief-stricken. * * * As just what I did just while I was in there, I don't know much about it. * * *

"Q. Now at the time you made this will to Mr. Bell that you say you executed, you did

execute a will, didn't you? A. I don't know what I done. I thought it was a will all the time.

"Q. You then had in mind to give all of your property to Mr. and Mrs. Bell, didn't you? A. Yes.

"Q. And you went up to the lawyer's for that purpose? A. Yes.

"Q. And you executed that will in good faith? A. Yes, as a will. * * * Mr. Bell was with me up to Mr. O'Connor's office. I don't remember if I talked with Mr. O'Connor. I don't remember whether he talked to me or whether he said anything. * * * I can't remember of anything being done in the office. I remember the witnesses Mr. Castlemen and Mr. Sears coming over there. * * *

"Q. And then do you remember now whether he showed you a paper like that? A. I don't remember a thing about it, not a thing. I was sitting there in grief and don't know what he said or nothing. * * *

"Q. Well, do you remember his handing you an instrument and having you to make your mark, and that you got up and made your mark on what he handed you there? A. I don't remember a thing about it.

"Q. Do you remember him taking your acknowledgment? A. No. * * *

"Q. Do you remember Mr. O'Connor taking this instrument and sitting down and reading it to you paragraph by paragraph and explaining to you that this was a deed? A. No, I don't remember of it ever being done. I don't remember a thing about it. * * *

"Q. This purports to be a last will and testament signed by you in the presence of Mr. Sears and Mr. Castleman. You say you don't remember about executing this instrument at all? A. No.

"Q. Didn't you testify this morning that you went up there and executed a will in Mr. O'Connor's office? A. No.

"Q. That you went up there and executed a will and thought it was. If you executed a deed you thought it was a will? A. Well, yes, I did that. I thought it was a will, never dreamed it was not.

"Q. Did you go up and execute a will? A. I went up there. What I done I couldn't ex-

actly tell. I went up there to execute a will. I don't remember a thing about what I told Mr. O'Connor.

"Q. If you told him anything at that time about the estate it was true and correct, wasn't it, as to the way you wanted it disposed of and the reason why? A. I don't know. I don't guess it was. * * * I don't remember what I told him.

"Q. I understood this morning that you wanted to give this property to your niece and nephew and you went up to make a will to that property. You wanted them to have it? A. Yes. * * * At that time that was my will. That was what I wanted to do with it that time. These were the facts about it at that time. I now remember that part about it. * * *

"Q. Do I understand you to say that you executed one instrument one day and then went up and executed one another day? A. I don't know what I done. I went up there twice. I do not know what I done either time." ·

It is questionable if the testimony tending to support the verdict should not be regarded as no more than a mere scintilla, and therefore no evidence at all, under the rule declared in Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, but certainly we think it should be held insufficient to support the verdict and judgment.

We are therefore of opinion that the judgment of the trial court should be reversed, and the cause remanded for another trial, and it is accordingly so ordered.

### On Rehearing.

Appellees request that we file additional findings of fact, among them being that Mrs. Hannah Parsons and her former husband were the owners of 400 acres of land instead of 240, as stated in our opinion. The number of acres is not material, but, since we inadvertently stated same erroneously, we grant the motion to the extent that it requests us to find that the number of acres so owned was 400. All other facts we are requested to find are at most but matters of evidence and not such ultimate and controlling facts as the law makes it our duty to find. Except, therefore, to the extent above noted, the motion is overruled.